**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

10-1802
_____

ALLA BARENBOY,

<u>Appellant</u>

v.

SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR, U.S. CITIZENSHIP & IMMIGRATION SERVICES;
KAREN FITZGERALD, Director, USCIS Philadelphia District Office;
EVANGELIA KLAPAKIS, Director, USCIS Philadelphia Field Office, in their official
capacities

(Pursuant to Fed. R. App. P. 43(c)(1))

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-03082)
District Judge: Hon. Louis H. Pollak

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2010

BEFORE: MCKEE, <u>Chief Judge</u>,  SLOVITER and COWEN , <u>Circuit Judges</u>

(Filed December 29, 2010)

_____

OPINION
_____

COWEN, Circuit Judge.

In this immigration-related matter, Plaintiff Alla Barenboy appeals from the order of the United States District Court for the Eastern District of Pennsylvania dismissing her complaint on jurisdictional grounds. We will affirm.

I.

This matter arises out of the denials by United States Citizenship and Immigration Services ("USCIS") of two separate Form I-130 Petitions for Alien Relative filed by Barenboy (an American citizen) on behalf of her spouse, Armen Danielyan (a native and citizen of Armenia who is currently the subject of a removal proceeding).

In 1999, Danielyan, a musician, traveled to the United States on a P-1 visa in order to perform at Carnegie Hall in New York City. In connection with this visit, an administrator from the Armenian Philharmonic Orchestra (Danielyan's employer) allegedly completed the requisite United States Department of State Form OF-156 Nonimmigrant Visa Application on his behalf. The Form OF-156 Application stated that Danielyan was married to Gayane Asatryan, an Armenian citizen. In 2001, Danielyan personally filed another Form OF-156 Application at the American Embassy in Armenia. "[A]n [embassy] employee helped him fill out the application by using the information stored in the system from his prior P-1 visa application," which he had "forgotten" stated that he was married to Asatryan. (Appellant's Brief at 5 (citing A35).) Danielyan then

2

purportedly signed the document "without noticing that it stated he was married." (Id. (citing same).)

Danielyan, in a sworn statement, acknowledged that he lived with Asatryan in Armenia from 1993 until they broke up in 1995. They had two daughters, born in 1994 and 1995. However, he insisted that they were never married.

Admitted in April 2001 as a non-immigrant visitor for business, Danielyan did not leave the country when his B-1/B-2 visa expired in May 2001. He also began a relationship with Barenboy. The two individuals eventually moved in together in January 2004. Barenboy was still legally married to another man, but she and Danielyan purportedly intended to get married once her divorce was finalized.

Danielyan was eventually apprehended by United States Immigration and Customs Enforcement ("ICE") agents on May 11, 2004. With the telephonic assistance of a Russian-language interpreter (a language that Danielyan could apparently speak "fairly well" although "his first and better language is Armenian"), Danielyan was questioned by the agents. (Id. at 7 (citing A21, A37).) He claimed in his written statement that:

> . . . . The translator asked me at one point why I was not married to Alla. I tried to explain to the translator that I was waiting for the divorce to go through. What I actually said was "*Zhdu Razvod*," which translates into "I wait divorce." It was a very rough way of saying that I was waiting for Alla's divorce to come through. I was so nervous from being handcuffed and taken into custody that that was all the Russian I could muster to explain things.
> . . . . It has become clear to me, from later events, that the translator and the agents misinterpreted my statement. When I said "*Zhdu Razvod*" – "I wait for divorce", I was referring to Alla's pending divorce proceedings, and the fact that our ability to marry hinged on her divorce coming through. But the agents thought I meant that I was still married, and that I needed a divorce

3

in order to marry Alla. The agents did not even consider the fact that Alla was the one who had an actual divorce case pending, a fact they could have easily looked up. There was no need for me to get a divorce – I had never been married!

(A37.) According to a declaration submitted by the USCIS Field Office Director, "Danielyan [thereby] informed ICE that he was married to Gayane Asatryan – who remained in Armenia – but that he intended to marry Alla Barenboy once divorced from Gayane Asatryan." (A30.) The Field Office Director also stated that Barenboy was present during the questioning and assisted with the translations.

Danielyan was then served with a Notice to Appear, charging that he was removable because he remained in the United States beyond the authorized period. Barenboy's divorce was finalized on August 23, 2004, and Barenboy and Danielyan were then married in Maryland on August 26, 2004.

Barenboy filed a Form I-130 Petition, requesting a bona fide marriage exemption pursuant to 8 U.S.C. § 1255(e)(3). When he was interviewed under oath at the Philadelphia District Office, Danielyan attempted to explain that he had never been married to Asatryan. USCIS issued a Notice of Intent to Deny for failure to show the termination of Danielyan's previous marriage to Asatryan. In addition to a statement from Danielyan explaining that he had never been married to Asatryan and denying that he ever told the ICE agents that he was, Barenboy submitted the following documentation (including both the purported originals as well as English translations): (1) a statement purportedly from Asatryan herself, asserting that she had two children with Danielyan but that she had never been married to him; (2) a certificate allegedly from the Armenian

4

Territorial Department of Civil Status Registry Office of Ajapnyak and Davtashen, indicating that there was no record of any registered marriage for Danielyan in the time period between October 12, 1990 and February 23, 2005; and (3) a statement purportedly from the Araratyan Patriarchal Diocese of the Armenian Apostolic Church, likewise asserting that Danielyan had never been married according to the rites of the Church.

On October 28, 2006, the USCIS District Director denied the first Form I-130 Petition, finding that Barenboy failed to prove "the dissolution of all previous marriages of both you and your current spouse" pursuant to 8 C.F.R. § 204.2(a)(2). (A261.) Barenboy responded by filing an administrative appeal as well as a second Form I-130 Petition.

After further interviews and an overseas investigation, the Field Office Director denied the second Form I-130 Petition on July 11, 2008. She determined, inter alia, that Barenboy's marriage "is a bigamist marriage and is not bona fide for the purpose of conveying an immigration benefit to Mr. Danielyan." (A115.) Explaining that Danielyan did not enter into a good faith marriage in accordance with the laws of the place where the marriage took place because he knew he was not free to marry, the Field Office Director concluded her rather lengthy decision as follows:

> . . . . The instant case taken in its entirety shows that your marriage took place after the beneficiary had been placed in proceedings, the beneficiary claimed he was never married prior to your marriage and therefore did not need a divorce, and that when USCIS required a divorce document, the beneficiary knowingly and willfully provided documents and sworn testimony to further his claim that his marriage to you was indeed bona fide, shows clearly and unmistakably that the beneficiary's marriage to you was not in good faith.

5

(Id.)  Barenboy appealed from this rejection of her second Form I-130 Petition.

On March 23, 2009, the Board of Immigration Appeals ("BIA") dismissed both administrative appeals.  The BIA agreed with the previous determinations of USCIS, "based on the beneficiary's sworn testimony to ICE officers, his two applications for a nonimmigrant visa (Form OF-156) indicating that the beneficiary was married to Gayane Asatryan, and the petitioner's failure to submit any evidence that the beneficiary's prior marriage has been terminated."  (A42-A43.)  According to the BIA, Barenboy failed to establish that the beneficiary was free to marry her, and their marriage therefore was not bona fide for the purpose of conferring an immigration benefit.

Barenboy filed a complaint with the District Court on July 10, 2009.  Naming several government officials as Defendants, she sought judicial review of the various administrative determinations made regarding her Form I-130 Petitions pursuant to the Administrative Procedure Act.  On March 1, 2010, the District Court granted Defendants' motion to dismiss, explaining, inter alia, that it lacked subject matter jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(i).

II.

An alien who marries a United States citizen while in removal proceedings is subject to a statutory presumption that the marriage itself is fraudulent.  See, e.g., 8 U.S.C. § 1154(g); 8 U.S.C. § 1255(e).  Unless this presumption is rebutted, a Form I-130 Petition filed on the alien's behalf may not be approved until the alien has resided outside the United States for a two-year period from the date of the marriage.  See, e.g., 8 U.S.C.

6

§ 1154(g); 8 U.S.C. § 1255(e). The presumption of fraud is successfully rebutted pursuant to the bona fide marriage exemption "if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant and no fee or other consideration was given (other than a fee or other consideration to an attorney for assistance in preparation of a lawful petition)." 8 U.S.C. § 1255(e)(3). In this matter, both USCIS and the BIA held that Barenboy failed to rebut this otherwise applicable fraud presumption.

For its part, the District Court determined that "Section 1255(e)(3) falls squarely within the jurisdictional bar provided in [8 U.S.C. § 1252(a)(2)(B)(i)]." (A8.) This subsection provides that "no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." Defendants, however, acknowledge that subsection (i) actually governs adjustment of status applications, and they turn instead to 8 U.S.C. § 1252(a)(2)(B)(ii).[1] See, e.g., Shook v. Avaya Inc., 625 F.3d 69, 72 (3d Cir. 2010) (stating that order of

---

[1] Noting that "Barenboy characterizes the question [at issue in this case] as one of law—i.e., whether the USCIS decision involved a mis-application of 8 U.S.C. § 1255(e)(3)," the District Court indicated that such a legal question should be considered by this Court pursuant to 8 U.S.C. § 1252(a)(2)(D). (A8 n.3.) Nevertheless, we need not (and therefore do not) consider the possible effects of this statutory subsection because this appeal may be resolved on other grounds. Defendants observe that they have never argued that § 1252(a)(2)(D) is applicable in the current circumstances, and they also properly note that the amicus curiae brief filed by the American Immigration Council addresses only the limited question of this particular subsection's applicability.

7

district court may be affirmed on any grounds supported by record). Subsection (ii) states that no court shall have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

Barenboy raises a number of arguments for why the District Court still retained subject matter jurisdiction over her complaint despite the language of § 1252(a)(2)(B)(ii). For instance, she contends that her current judicial action raises purely legal questions, such as whether Danielyan possessed the legal capacity to marry her. More broadly, Barenboy contends that the determination to grant or deny a bona fide marriage exemption constitutes a non-discretionary decision for purposes of the jurisdictional bar. Having fully considered her various assertions, we nevertheless conclude that the District Court lacked subject matter jurisdiction over this action. Here, both USCIS and the BIA determined that Barenboy failed to prove "*by clear and convincing evidence to the satisfaction of the Attorney General*" that her marriage to Danielyan "was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant." 8 U.S.C. § 1255(e)(3) (emphasis added). Pursuant to § 1252(a)(2)(B)(ii), the District Court lacked jurisdiction to review such discretionary determinations. Cf., e.g., Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006)

8

("This language [in 8 U.S.C. § 1158(a)(2)(D)] requiring an asylum applicant to make a demonstration to the Attorney General's 'satisfaction' implies that the Attorney General's determination entails an exercise of discretion." (citation omitted)).

Even if we were inclined to conclude that the District Court had jurisdiction, it is clear that Barenboy's complaint must still be dismissed for failure to state a claim upon which relief can be granted. She asserts that the administrative denials of her Form I-130 Petitions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), were made "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and were otherwise "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). Nevertheless, USCIS and the BIA complied with their legal obligations and their respective determinations regarding the Form I-130 Petitions were supported by substantial evidence. In particular, we note that the record contains two Form OF-156 Applications filed on behalf of Danielyan and that both of these documents clearly stated that he was married to Asatryan. USCIS, in turn, has consistently (and reasonably) maintained that Danielyan told the ICE agents after his apprehension that he was still married to Asatryan and that he intended to marry Barenboy after he divorced her.

III.

For the foregoing reasons, we will affirm the order of the District Court.